UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOLORES ROBINSON | : | No. 3:00CV 661 (RNC) |
| VS. | : | |
| MELVIN WEARING, ET AL.<br>Defendants | : | JANUARY 9, 2004 |

### DEFENDANTS' MEMORANDUM CONCERNING JURISDICTIONAL ISSUES RAISED BY THE COURT

**Introduction.** At a recent pretrial conference the Court asked respective counsel for the parties to consider several jurisdictional issues, with the express concern that the evidence as proferred by the plaintiff might not survive a Motion for Judgment on the Law, at least as to the federal law claims.

Counsel have been unable to agree, and Your Honor's Law Clerk advised that we should file simultaneous memoranda of law as of Friday, January 9, 2004.

Counsel for plaintiff orally advised defense counsel that in addition to the specific questions raised by the Court she would also address the timeliness of the Court entertaining such questions at this time. Accordingly, the defense will also address the issue of timeliness.

Counsel for the defense also advised plaintiff's counsel that we would also address yet several more jurisdictional issues, which we identified for plaintiff's counsel and which were discussed at the pretrial even though the Court did not specifically ask that we further research those matters. Thus, we anticipate that plaintiff's counsel may also address such matters.

Counsel have agreed to serve each other by facsimile late today or early tomorrow so that we will each have the weekend to examine the others submission.

I. **The Court's request that the parties address the question of whether the federal claims in this case could survive a Motion for Judgment on the Law, in light of the evidence proferred by the plaintiff at the pretrial, is entirely appropriate and timely.**

1. The issues which the Court asked that we further address are jurisdictional, and as such may be raised at any time either by the parties or the Court sua sponte.

2. As a general matter it is within the Court's sound discretion to control its own docket as well as avoid unnecessary time devoted to actual trial, and if the evidence purporting to support federal claims is unable to withstand a Motion for Judgment on the Law any State law claims may be dismissed and refiled in State Court.

3. Coincidentally, upon entering a new Appearance in this case in March 2002 the undersigned counsel did request that deadlines be extended, in part so that the defense might file a dispositive motion, but that request was denied.

The undersigned defense attorney was not the first attorney of record in this lawsuit. At the time the case was filed I was in private practice and only handled specific cases for the Office of Corporation Counsel for the City of New Haven pursuant to a contract for "outside" legal services.

-2-

Shortly after the current Corporation Counsel assumed that post and withdrew from personally handling most litigation he assigned this case to the undersigned from his own prior assignment list.

On March 27, 2002 I filed a Response to Show Cause Order for delay in filing our Pretrial Memorandum, and I simultaneously filed a Motion to Extend Pretrial Deadlines pointing out that the plaintiff's portion of the Pretrial Memorandum "identifies 34 witnesses (including the plaintiff) and more than 200 exhibits," "[I]n contrast . . . [to] plaintiff's Answers to Interrogatories" which had identified only "five (5) persons, all labor Union officials, in response to our request for the identity of all witnesses to the events at issue in the lawsuit." [Defendants' Motion to Extend Pretrial Deadlines, March 27, 2002, page 1 (copy appended hereto).]

That motion also set forth in detail the then recent appointment of the new Corporation Counsel, my then recent corresponding assignment to the case, the lack of prejudice to the plaintiff, an explanation of the need for and potential of additional pretrial proceedings, and, in part, Id., at page 3, that "I also suspect that this case can be resolved on motion for summary judgment."

The Court denied that motion by margin order.

## II. The plaintiff cannot establish her prima facie claim of First Amendment retaliation.

**1. The plaintiff's continuing union activities, complaining on her own behalf, complaining on the behalf of fellow union members, and running for office belie the requirement that her activities have been "chilled" in order to establish a prima facie case of First Amendment retaliation.**

To establish a claim of retaliation for the exercise of First Amendment rights, the plaintiff must prove that "(i) [it] has an interest protected by the First Amendment, (ii) the defendant['] actions were motivated by or substantially caused by the plaintiff's exercise of that right and (iii) the defendant['s] actions chilled the exercise fo those rights." Kerman v. City of New York, 261 F.3d 229, 241-42 (2d Cir. 2001). [1]

Under the third element the plaintiff must prove that her speech was "actually chilled" by the defendant's actions. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001); Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995); Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d Cir. 1992); New England Health Care, Employees Union, District 1199, SEIU/AFL-CIO v. Rowland, 221 F.Supp.2d 297, 343 (D. Conn. 2002) (JCH).

---

[1] Proof of a First Amendment retaliation claim has also been summarized as follows: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Davis v. Goord, 320 F.3d 346, 352, as amended and as corrected, (2d Cir. 2003), quoting Dawes v. Walker, 239 F.3d 489, 492(2d Cir. 2001).

The plaintiff's continuing union activities, complaining on her own behalf, complaining on the behalf of fellow union members, and running for office belie the requirement that her speech has been "chilled." **2**

Also, her claim of a "chill" of her speech as to actions predating September 7, 1997, is further belied by her initiation of a complaint with the State Commission on Human Rights and Opportunities on that date.

**2.  To the extent plaintiff is relying on union activities with respect to her personal status or grievances (as opposed to her representing other or broader interests), she fails to allege a matter of "public concern" which is an element of a First Amendment retaliation claim.**

"[W]hen an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interst, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); Salpaugh v.Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993), quoting Connick; White Plains Towing

---

2     Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to engage" in protected activity are actionable; "in other words, allegations of *de minimis* acts of retaliation do not state a claim under Section 1983." Rivera v. Goord, 119 F.Supp.2d 327, 340 (S.D.N.Y. 2000). Citing Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999), which in turn was cited with approval in Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999), and numerous other cases cited in Rivera.

Corp. v. Patterson, 991 F.22d 1049, 1058-60 (2d Cir.), cert. denied, 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); Ericson v. City of Meriden, et al., 113 F.Supp.2d 276, 290 (D.Conn. 2000) (GLG).

As noted in Salpaugh, in the instant case plaintiff does not seek releif against "pervasive or systemic misconduct by a public agency or public officials" or that her suit was "part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention." Salpaugh v. Monroe Community Hospital, supra, 4 F.3d at 143 (citations omitted).  Neither is the Union to which the plaintiff belongs a party, and the is no allegation and no basis for plaintiff to allege standing on behalf of other members of the Union.  Indeed, had she done so they would be entitled to notice and opportunity to be heard as necessary and/or indispensable parties.

Manifestly, plaintiff is in this only for her own personal benefit.

Your Honor followed that the Connick principle in DeLeon v. Little, et al., 981 F.Supp. 728, 733 n. 1 (D.Conn. 1997) (RNC), citing White Plains Towing.

Rendish v. City of Tacoma, et al., 123 F.3d 1216, 1220-1224 (9th Cir. 1997), discusses many other federal circuits that follow the same principle.

**III.    (1) <u>Does Title VII of the Civil Rights Act of 1964, as amended, provide the sole potential remedy for plaintiff's claims racial discrimination, (2) if so has the plaintiff exhausted administrative remedies, and (3) if so can the plaintiff meet her burden of proof?</u>**

Plaintiff has <u>not</u> alleged a violation of Title VII of the Civil Rights Act, as amended, although she did file a predicate complaint with the State Commission on Human Rights & Opportunities on or about August 29, 1997. The CHRO Complaint was eventually dismissed by that agency. [Copies appended hereto.]

**1.    A claim of denial of equal protection which under Section 1983 cannot be used to circumvent Title VII's limitations.**

A claim of denial of equal protection pursuant to 42 U.S.C. Section 1983 cannot be used to circumvent Title VII's limitations, and may be utilized only as a jurisdictional mechanism in the employment context only if there are alleged violations of substantive rights distinct from Title VII, such as a claimed violation of the First Amendment.  <u>Saulpaugh</u> v. <u>Monroe Community Hospital</u>, 4 F.3d 134, 143 (2d Cir. 1993); <u>Carrero</u> v. <u>New York City Housing Authority, et al.</u>, 890 F.2d 569, 576 (2d Cir. 1989); <u>Ericson</u> v. <u>City of Meriden, et al.</u>, 113 F.Supp.2d 276, 289-290 (D.Conn. 2000) (GLG).

Therefore, except as to her First Amendment claim the plaintiff cannot pursue a claim of denial of equal protection in the employment context pursuant to 42 U.S.C. Section 1983 and she cannot do so in this lawsuit.

**2.    If plaintiff should now seek to allege violations of Title VII and _if_ the Court allowed such amendment, the claims she could pursue in this Court must be limited to those she alleged in that CHRO Complaint.    42 U.S.C. Section 2000e-5.**

The allegations in this lawsuit and the proferred evidence that was discussed at pretrial and which is reflected in the evidence surely goes well beyond the complaints to the CHRO.

For example, the most egregious act of misconduct alleged at the pretrial was a claim that Chief Fiscal Officer Captain James Sorrentino made racially offensive remarks directly to the plaintiff, remarks which were allegedly witnessed by others, yet nowhere does that allegation appear in the CHRO complaint. Also, there are allegations proferred at the pretrial that the Supervisor of the Records Unit, now retired Lt. Joyce Illingworth discriminated against the plaintiff, yet nowhere is there such an allegation in the CHRO Complaint.

In that CHRO Complaint, a copy of which is appended hereto, Ms. Robinson alleges the following alleged acts of discrimination.

- that in June 1997 Ms. Robinson "inadvertently touched" Chief Fiscal Officer Captain James Sorrentino" and that "[a]s a result, he threatened that she should never touch im ever again, and since then, he has continually threatened to fire her;

- Ms. Robinson "is not allowed to make or receive any personal telephone calls and yet other co-workers within her department are permitted personaul use of the Department's phones;

-8-

- "although everyone else in her position within her department was issued a new computer, she was never issued a computer,"

- although Ms. Robinson "has repeatedly requested that . . . [she be transfered] to another unit within the police department outside of the control and/or supervision of" Chief Fiscal Officer Sorrentino and Supervisor of Management Services Michael Piasecki, Ms. Robinson has not been so transferred, although in the very next sentence she indicates that she was transferred, and

- Ms. Robinson "repeatedly requested a desk with a locking drawer, a safe, as well as a computer," those had not been provided as of the time of the CHRO complaint.

There are other claims objectionable for the same reason. If trial proceeds we will object at the appropriate time, or file a motion in limine to the extent we can anticipate arguments.

**3. There can be no finding of a denial of equal protection by the City under Title VII if it has sufficient policies for preventing discrimination.**

The City of New Haven (and the Police Department) have a long established policies and procedures for preventing and/or curing discrimination, and the relevant collective bargaining agreements to which the City is a party expressly condemns such discrimination and provides a detailed grievance procedure leading to binding arbitration.

In such circumstances there can be no finding of a denial of equal protection

-9-

by the City.   Carrero v. New York City Housing Authority, et al., 890 F.2d 569, 577 (2d Cir. 1989).

**IV.  To the extent the Court does have jurisdiction under 42 U.S.C. Section 1983, has the plaintiff proferred sufficient evidence so that the burden of proof can be met by the plaintiff, in particular that the plaintiff was "similarly situated" to the fellow employee she claims received better treatment because of a different race?**

The question the Court raised in this regard was based on the proffer that the plaintiff is "similarly situated" to Deborah Keyes, a Caucasian who was allegedly given more favorable treatment than the plaintiff.  The Court inquired whether Deborah Keyes was a union activist, and, if not, whether union activism is a "material distinction."  Thus, as we understand the Court's question, would the absence of union activism on the part of Deborah Keyes mean that she and the plaintiff are not "similarly situated."

We have not found a case precisely on point.

But plaintiff has herself established the parameters of the "similarly situated" standards in this case since it is she who claims that her union activism was the cause of the alleged racial discrimination and the alleged retaliation.

-10-

### V. Has plaintiff proferred evidence which would support a claim against the City of New Haven under Title 42 U.S.C., Section 1983 (i.e., a so-called Monell claim)?

Even if the plaintiff can proceed under 42 U.S.C. Section 1983, she has proferred no evidence to support liability against the City under the so-called "Monell" standards which derive from a United States Supreme Court case by that name.

In order to impose liability on a municipality for a violation of the her constitutional rights the plaintiff must demonstrate that the City, through senior officials, acted with "deliberate indifference" to a known problem of constitutional dimensions.

In order to prove such "deliberate indifference" to a known problem in this case, the plaintiff must prove each of the following elements.

First, the plaintiff must prove a violation of her constitutional rights by New Haven Police Officers.

Second, the acts or omissions which constituted the violation of constitutional rights must be directly attributable to senior City officials with the final legal power and responsibility for establishing and regulating the particular policies at issue.

Third, in this case, the plaintiff must prove that at the time of the events at issue in this lawsuit, there was a policy of racial discrimination within the New Haven

Police Department or a custom of racial discrimination so pervasive that it is attributable to senior City officials responsible for supervision, training and/or discipline.

<u>Fourth</u>, the plaintiff must also prove that the senior responsible officials promoted or condoned <u>a pattern</u> of the types of policy misconduct involved, that is, a pattern of failure to adequately supervise, train or discipline officers in investigations leading to search warrant.

Plaintiff must prove all four elements. [3]

Only if plaintiff has proven all those elements has plaintiff proven that the City acted with "deliberate indifference" to a known problem.

In this case the only evidence proferred is that the co-defendant then Chief of Police Melvin Wearing was advised of the <u>plaintiff's grievances</u> and did not intervene to prevent them.

Plaintiff did in fact get a State Representative to write to the Mayor to ask him to look into the situation and the Mayor referred the matter to the Chief who did look into the matter and wrote to the State Representative explaining the circumstances.

---

[3]  City of Canton, Ohio v. Harris, et al, 489 U.S. 381, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Pembauer v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); 1989; City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed 806 1986; Monell v. Department of Social Services, 436 U.S. 658, 98 S.CT. 2018, 56 L.Ed2d 611 (1978); Turpin v. Mailet, et al, 619 F.2d 196 (2d Cir. 1980), on remand.

There is no allegation and no evidence that any claim of systemic racial discrimination in the police department was made by the plaintiff, directly or indirectly, to the Chief, or that the Chief, himself an African-American, condoned or tolerated such discrimination.

Also, as indicated above, the City of New Haven (and the Police Department) have a long established policies and procedures for preventing and/or curing discrimination, and the relevant collective bargaining agreements to which the City is a party expressly condemns such discrimination and provides a detailed grievance procedure leading to binding arbitration.

In such circumstances there can be no finding of a denial of equal protection by the City.  Carrero v. New York City Housing Authority, et al., 890 F.2d 569, 577 (2d Cir. 1989).

## VI. Conclusion and further proceedings.

If the Court believes it appropriate to have affidavits in order to dispose of the matter as a summary judgment we will provide them.  We believe it would be presumptuous to submit them at this point and without further directive of the Court.

-13-

Respectfully submitted,

*(signature)*

Martin S. Echter
Deputy Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
Phone: (203) 946-7958
Fax: (203) 946-7942
Pager: 1-860-590-4432
Fed. Bar No. ct 07596

### Certificate of Service

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and MAILED, POSTAGE PREPAID, to The Law Office of Williams & Pattis, 51 Elm Street, 4th Floor, New Haven, CT 06510, this 9th day of January, 2004.

*(signature)*
Martin S. Echter