# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**FILED**

| | | |
|---|---|---|
| **DOLORES ROBINSON**<br>**Plaintiff** | : | No. 3:00CV 661 (RNC)    2002 MAR 27  P 1:05 |
| VS. | : | US DISTRICT COURT<br>HARTFORD CT |
| **MELVIN WEARING, ET AL.**<br>**Defendants** | : | MARCH 27, 2002 |

## DEFENDANTS' MOTION TO EXTEND PRETRIAL DEADLINES

Newly appearing counsel for the defendants respectfully moves this Honorable Court to extend pretrial deadlines, for the reasons indicated hereinafter, to: May 15, 2002 to complete discovery, and June 1, 2002 to file dispositive motions.

We have today filed the Joint Pretrial Memorandum.

Counsel for plaintiff objects.

The Court Docket Sheet indicates that a Scheduling Order was entered June 27, 2000, with continuances for a settlement conference in October 2001.

### Reasons for granting the requested relief.

**1. Enormous number of potential plaintiff's witnesses not previously identified.** Plaintiff's portion of the Pretrial Order identifies 34 witnesses (including the plaintiff) and more than 200 exhibits. In contrast, plaintiff's Answers to Interrogatories of only five (5) persons, all labor Union officials, in response to our request for the identity of all witnesses to the events at issue in the lawsuit.

**ORAL ARGUMENT IS REQUESTED**
**TESTIMONY IS NOT REQUIRED**

April 30, 2002. Denied. So ordered.
Robert N. Chatigny, U.S.D.J.

**RECEIVED**

**STATE OF CONNECTICUT**

Commission on Human Rights and
Opportunities on the Complaint of:

SEP 2 1997

COMM. ON HUMAN RIGHTS
& OPPORTUNITIES
WEST CENTRAL REGION

COMPLAINT AFFIDAVIT

Dolores Robinson
(COMPLAINANT)

Complaint No. 9830131

vs.

New Haven Police Department
(RESPONDENT)

Date: rc'd 9/2/97

I, Dolores Robinson
(Full Name of Complainant)

residing at 249 Colony Road, New Haven, CT 06511
(Complete Address)

charge New Haven Police Department
(Full Name of Respondent)

whose address is One Union Avenue, New Haven, CT 06511
(Complete Address)

with an unlawful discriminatory practice relating to my employment

at New Haven Police Department
(Where Discrimination Occurred)

on or about _____
(Date)

by harassment and discrimination
(Alleged Discrimination)

in violation of section(s) (include applicable subsection(s) C.G.S. Sections 46a-60(a)(1) and (4) of the Connecticut General Statutes, as amended, because of my

(X) Race          ( ) National Origin        ( ) Mental Disorder
(X) Color         ( ) Marital Status         ( ) Alienage
( ) Sex           ( ) Physical Disability    ( ) Previously Opposed or Filed,
( ) Ancestry      ( ) Mental Retardation         Testified or Assisted
( ) Age           ( ) Religious Creed/Creed/ ( ) Minor Children
                      Religion

An independent Agency attached to the Department of Administrative Services for administrative purposes.

OVER

2.

More specifically:

1. The Complainant, Delores Robinson, resides at 249 Colony Road, New Haven, CT 06511, is African-American by race and is black by way of color.

2. Complainant works as an Account Clerk II for the New Haven Department of Police Services ("Police Department") and has worked in this capacity for almost seven(7) years.

3. The Respondent, the New Haven Department of Police Services is located at One Union Avenue, New Haven, CT and employs well over one hundred individuals at its headquarters and various substations throughout the City.

4. Co-Respondents James Sorrentino, the Chief Fiscal Officer for the Police Department and Mike Piasecki, Supervisor of Management Services within the department are of the caucasian race and their color is white and they are the direct supervisors of the Complainant at the Police Department; with Mike Piasecki reporting to James Sorrentino.

5. Notwithstanding Complainant's years as an Account Clerk II and her never having received an unfavorable evaluation due to her performance or abilities as such, the Complainant has been within the last six(6) months faced with an ever escalating hostile work environment in which she is constantly harassed by the co-Respondents.

6. For example, in June of 1997 the Complainant inadvertently touched co-Respondent Sorrentino. As a result, he threatened that she should never touch him ever again, and since then, he has continually threatened to fire her.

7. Complainant feels that she is continually being harassed and discriminated against at work for actions for which other caucasian, white employees are not reprimanded. For instance, Complainant is not allowed to make or receive any personal telephone calls and yet other co-workers within her department are permitted personal use of the Department's phones. Further, although everyone else in her position within her department was issued a new computer, she was never issued a computer, despite the fact that she has repeatedly requested one.

DO NOT WRITE IN THIS SPACE

8. The Complainant has repeatedly requested that the Respondent transfer her to another unit within the police department outside of the control and/or supervision of the Co-Respondents. Notwithstanding these requests by the Complainant, the most recent being in March 1997, the Respondent has refused to comply with this request although a number of such positions have been open and available.

9. While Complainant has recently, finally been transferred, it is within a unit under the control and/or supervision of the Co-Respondents.

10. Complainant's new position requires all monies and firearms to go through her custody and control. Complainant feels this "transfer" is simply continued harassment and a ploy so that she will, as others who have previously held her newly acquired position, be blamed for any inventory which is either lost, misplaced or otherwise unaccounted for by the periodic internal audits conducted within the department.

11. Although Complainant has repeatedly requested a desk with a locking drawer, a safe, as well as a computer so she can keep proper inventory of all monies and firearms presented to her, the co-respondents have refused to provide these items which will insure accuracy and proper accountability.

12. As a result of the acts of the Respondent and co-Respondent, Complainant has been persistently and unfairly exposed to discrimination and harassment within a hostile work environment. Respondent and co-Respondents' actions amount to uncontroverted violations of Section 46a-60(a)(1) and (4) of the Connecticut General Statutes.

............................................................... siendo jurado, bajo juramento, aqui el o la quejante sostiene que; ha leido esta queja y conoce su contenido; que lo mismo es verdad de su propio conocimiento excepto a las casas estipulada en informacion y creencia, y cree que el dicho asunto a su fe es solamente la verdad.

Dolores Robinson .................. being duly sworn, on oath, states that she ...... is the ...... Complainant herein; that she has read the foregoing complaint and knows the contents thereof; that the same is true of her own knowledge, except as to the matters therein stated on information and belief and that as to these matters she believes the same to be true.

Dated at New Haven, Connecticut this 29th day of August, 1997.

*Dolores Robinson*
Dolores Robinson

Subscribed and sworn to before me 29th day of August, 1997.

My Commission Expires May 31, 1999



**CONNECTICUT COMMISSION on HUMAN RIGHTS & OPPORTUNITIES**

February 24, 1998

Certified Mail No. P 152 143 474

Delores Robinson
249 Colony Rd.
New Haven CT 06511

Subject:   Reconsideration Request - REJECTED

Re:   <u>Delores Robinson v. City of New Haven</u>
      CHRO Case No. 9830131

Dear Ms. Robinson:

Your complaint, which is noted above, was dismissed by this agency. You filed a timely request for reconsideration. Your request for reconsideration has been carefully reviewed by staff, who have recommended it to be rejected. A copy of the review is enclosed for your information and review. The Commission has accepted the recommendation and denied your request. This denial of reconsideration is the Commission's final decision on your complaint.

Denial may be appealed by filing a petition in the Connecticut Superior Court for the judicial district where the discriminatory practices is alleged to have occurred or in the judicial district where you reside or transact business. Such appeal must be made in accordance with the provisions of relevant Connecticut General Statutes including Section 4-183 as it reads after July 1, 1989. Copies of the petition must be served upon this agency at its principal office or the office of the Attorney General and on all parties listed in the decision.

While we did not find a violation regarding this complaint, I urge you to use our services, should you feel you have suffered discrimination in the future.

Very truly yours,

*Nicholas A. Cioffi*

Nicholas A. Cioffi, Chairperson

db

cc:   Attorney Martin Philpot
      Attorney Donna Chana Dowdie
      City of New Haven


21 GRAND STREET . HARTFORD . CONNECTICUT 06106 (860) 541.3400  FAX (860) 246.5068  Toll Free in Connecticut 1.800.477.5737

*Affirmative Action / Equal Opportunity Employer*

AGREEMENT

BETWEEN

THE CITY OF NEW HAVEN

AND

LOCAL 884 OF THE AMERICAN FEDERATION OF

STATE, COUNTY AND MUNICIPAL EMPLOYEES

JULY 1, 1995 - JUNE 30, 2001

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Purpose | 1 |
| Article 1 - Recognition | 1 |
| Article 2 - General | 2 |
| Article 3 - Rights of Employer | 3 |
| Article 4 - Union Security And Check Off | 4 |
| Article 5 - Seniority | 5 |
| Article 6 - Vacations | 8 |
| Article 7 - Hours of Work | 10 |
| Article 8 - Overtime | 17 |
| Article 9 - Call-In Pay | 18 |
| Article 10 - Sick Leave | 19 |
| Article 10A - Occasional Sick Leave and Short Term Disability | 23 |
| Article 11 - Time Allowance For Death In Family | 25 |
| Article 12 - Holidays | 26 |
| Article 13 - Grievance Procedure | 27 |
| Article 14 - Arbitration | 29 |
| Article 15 - Wages | 30 |
| Article 16 - Shift Differential | 34 |
| Article 17 - Longevity | 34 |
| Article 18 - In-Service Training | 35 |
| Article 19 - Meal Allowance | 37 |
| Article 20 - Prior Practices | 37 |
| Article 21 - Non-Discrimination | 37 |
| Article 22 - Insurance | 38 |
| Article 23 - Workers Compensation | 47 |
| Article 24 - Union Activities | 48 |
| Article 25 - Union Business Leave | 48 |
| Article 26 - Disciplinary Procedure | 49 |
| Article 27 - Authority And Responsibility Of The Civil Service Commission and The City Boards and Commissions | 50 |
| Article 28 - No Strike Provision | 51 |
| Article 29 - Pension | 51 |
| Article 30 - Special Provisions | 52 |
| Article 31 - Personal Leave | 53 |

Section 6

An employee shall be paid holiday pay based on regular day's pay computed on the employee's regular hourly rate.

Section 7

Police Department employees whose positions are regularly scheduled for a 7 day operation shall be allowed to take a day in lieu of the holiday within 30 days before or no later than 30 days after the holiday, and will be paid at the rate of 1-1/2 for the holiday worked.

## ARTICLE 13 - Grievance Procedure

Section 1

It is understood by the parties that the intent of having a grievance procedure is to allow the Department to function in an orderly fashion, and as such it is expected that all orders shall be followed by all employees. Should a dispute arise, the employee is expected to carry out his assignment without delay and file his grievance in accordance with the procedure outlined in this Article. Failure on the part of an employee to carry out a direct order of a supervisor will be considered insubordination for which appropriate disciplinary action will be taken.

The Employer and the Union desire that all employees in the unit be treated fairly and equitably. It is intended that this grievance procedure will provide a means of resolving grievances at the lowest level possible, and nothing in this Article should be interpreted as discouraging an employee and/or his representative from discussing any dissatisfaction, in an informal manner, with his immediate supervisor, higher level supervision, or Department of Labor Relations representatives. Such discussions will not interfere with the right of any employee to process grievances through the grievance procedure, providing the Union is promptly notified of such grievance as it is being processed.

Section 2

Step 1(A):

An employee with a grievance should first discuss the matter with his immediate supervisor. In this discussion, the persons involved shall make an earnest effort to resolve the matter. The Supervisor shall make whatever additional investigation is necessary and shall give his answer as soon as practicable, but within three (3) working days. It is agreed that most grievances should be settled at this Step.

27

Step 2(B):

If an employee is not satisfied with the answer at Step 1 he shall then reduce his grievance to writing, either on a form mutually agreed to by the parties or in a letter. Such grievance must contain the following information: (1) A statement indicating his decision to process his grievance through the negotiated grievance procedure; (2) A statement presenting the nature of the grievance; (3) A statement outlining the relief sought; and (4) Specific reference to the clause or clauses of the Agreement which the grievant feels have been violated. The employee and/or his chosen representative shall submit the written grievance to the Department Head, who, in turn, shall submit to the Union a written answer to the grievance within five (5) working days of the answer at Step 1(A).

Step 3(C):

If the decision at Step 2 is not satisfactory to the employee, he may appeal, in writing to the Director of Labor Relations within ten (10) working days after receiving the decision at Step 2. Upon receipt of such an appeal, the Director or his designated representative will investigate the grievance and make an effort to resolve it to the satisfaction of all parties. Prior to denying any grievance at this Step, the aggrieved employee and/or his representative, if any, shall be afforded the right to meet and discuss the grievance with the Director or his representative. The decision of the Director or his representative will be made as soon as practicable, but not later than ten (10) working days after receipt of appeal from Step 2.

Section 3

Any grievance which is not taken up with the employee's immediate Supervisor within fifteen (15) working days after the occurrence of the matter, out of which the grievance arises, shall not be presented or considered at a later date. The employee agrees that extenuating circumstances may arise where an employee will not have knowledge, within the time limits prescribed, of the matter which resulted in his becoming aggrieved and, in such instances the Employer will give due regard and consideration to the time limits set forth above.

Extensions to all time limits mentioned in this Article may be made by mutual agreement of the parties in writing. Any grievance not answered within the time limits may be taken immediately to the next step of the grievance procedure.

Section 4

At Steps 2 and 3 of this procedure, the Employer and the Union shall be permitted to call a reasonable number of relevant witnesses, normally not more than two (2) from each party at Step 2 and three (3) from each party at Step 3.

Section 5

When several employees within the unit have an identical grievance, the Union will select one individual case for processing with the understanding that the decision on the case will be applied to the other identical cases. Such grievances shall be known as a Unit Grievance.

28

Section 6

An employee's grievance will be considered settled upon his written request, or when the complainant ceases to be a regular employee of the City, by resignation or when the time limit to appeal to the next Step expires, unless the grievance is directly related to the employee's termination and he desires it to be processed, or unless the Union considers the grievance to reflect on or affect other employees in the bargaining unit.

Section 7

Grievances will be heard at times most practical to do so. Should such times occur during periods other than normal working hours, the City shall accept no financial obligation for such time spent by the grievant and/or other Union representatives.

Section 8

The Union agrees that it shall cooperate with the City by making every effort to handle grievances in such a manner so as to cause a minimum of interference with normal operations of a Department.

Section 9

It is recognized by both parties that on occasions a grievance may develop, the immediate disposition of which would be in the best interests of both parties (i.e. discharge or suspension). In such instances, the responsible Union official may contact the Labor Relations Director directly to acquaint him with the situation. At that time a determination shall be made as to what procedure is to be followed.

## ARTICLE 14 - Arbitration

Section 1

In order to be considered, a petition by the Union for arbitration shall be received by the Director of Labor Relations or his representative within ten (10) working days from the date of decision at Step 3 of the grievance procedure. Grievances not appealed within this time shall be considered as settled.

Section 2

Petition for arbitration shall be in writing and contain the following items: (1) Signed approval to arbitrate by the Union, (2) The Section(s) believed violated; (3) The relief sought; and, (4) A statement of the issue involved. In order that both parties may be fully prepared should a case go to arbitration, it is agreed that neither party may amend the Article(s) and/or Section(s) believed violated after receipt by the Director of Labor Relations of the petition for arbitration.

29

## ARTICLE 19 - Meal Allowance

**Section 1**

The meal allowance shall be increased to five dollars ($5.00).

**Section 2**

Employees assigned to either the regional incinerator or the sewage disposal plants who are required to work beyond their regularly scheduled shifts shall be eligible for meal allowance in accordance with the hours and conditions set forth in Sections 1 and 3, provided the hours listed in Section 3 do not fall within their regularly scheduled shifts.

Should the employees referred to in this Section finish working prior to any of the hours set forth in Sections 1 and 3, even though they may have worked beyond their regularly scheduled shift, said employees shall not be entitled to meal allowance.

**Section 3**

The meal allowance shall be provided for those eligible employees working one-half hours past the meal times of 6 p.m., 12 midnight, 6 a.m. Also meal allowances shall be provided for the noon meal in those instances when work being performed is on a paid holiday, Saturday or Sunday, provided such employees are not regularly scheduled to work these days.

The meal allowance shall be paid through a supplementary check and shall be paid once monthly.

## ARTICLE 20 - Prior Practices

Nothing in this Agreement shall be construed as abridging any right, benefit or privilege that employees have enjoyed heretofore unless it is specifically included as a provision of this Agreement.

## ARTICLE 21 - Non-Discrimination

There shall be no discrimination, threat, penalty, coercion or intimidation of any kind against any employee for reasons of race, creed, color, sex, religious belief, union membership, national origin, political affiliation, age, handicap or union activity.

**LANGUAGE AS PER ARBITRATION AWARD**

**CASE NO. 9192-MBA-215**

**DATED: APRIL 8, 1996**

**CONTRACT UNSIGNED**

**AGREEMENT**

**BETWEEN**

**THE CITY OF NEW HAVEN**

**AND**

**LOCAL 884 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES**

**JULY 1, 1992 - JUNE 30, 1995**

## Table Of Contents

|  | Page |
|---|---|
| PURPOSE |  |
| Article 1-Recognition | 1 |
| Article 2-General | 3 |
| Article 3-Rights Of Employer | 4 |
| Article 4-Union Security And Check-Off | 4 |
| Article 5-Seniority | 6 |
| Article 6-Vacations | 10 |
| Article 7-Hours Of Work | 13 |
| Article 8-Overtime | 21 |
| Article 9-Call-In Pay | 23 |
| Article 10-Sick Leave | 24 |
| Article 11-Time Allowance For Death In Family | 29 |
| Article 12-Holidays | 30 |
| Article 13-Grievance Procedure | 32 |
| Article 14-Arbitration | 35 |
| Article 15-Wages | 36 |
| Article 16-Shift Differential | 39 |
| Article 17-Longevity | 40 |
| Article 18-In-Service Training | 41 |
| Article 19-Meal Allowance | 43 |
| Article 20-Prior Practices | 44 |
| Article 21-Non-Discrimination | 44 |
| Article 22-Insurance | 44 |
| Article 23-Workers Compensation | 56 |
| Article 24-Union Activities | 57 |
| Article 25-Union Business Leave | 57 |
| Article 26-Disciplinary Procedure | 59 |
| Article 27-Authority And Responsibility Of The Civil Service Commission And The City Boards And Commissions | 60 |
| Article 28-No Strike Provision | 61 |
| Article 29-Pension | 61 |
| Article 30-Special Provisions | 62 |
| Article 31-Personal Leave | 64 |
| Article 32-Residency | 64 |
| Article 33-Coverage | 64 |
| Article 34-Supervisory Clause | 64 |
| Article 35-Uniforms | 64 |
| Article 36-Miscellaneous | 65 |
| Article 37-Savings Clause | 66 |
| Article 38-Duration And Contract Renewal | 66 |
| Schedule A-1992-93 Wage Schedule | 69 |
| Schedule B-1993-94 Wage Schedule | 70 |
| Schedule C-1994-95 Wage Schedule | 71 |

## ARTICLE 13 - Grievance Procedure

Section 1

It is understood by the parties that the intent of having a grievance procedure is to allow the Department to function in an orderly fashion, and as such it is expected that all orders shall be followed by all employees. Should a dispute arise, the employee is expected to carry out his assignment without delay and file his grievance in accordance with the procedure outlined in this Article. Failure on the part of an employee to carry out a direct order of a supervisor will be considered insubordination for which appropriate disciplinary action will be taken.

The Employer and the Union desire that all employees in the unit be treated fairly and equitably. It is intended that this grievance procedure will provide a means of resolving grievances at the lowest level possible, and nothing in this Article should be interpreted as discouraging an employee and/or his representative from discussing any dissatisfaction, in an informal manner, with his immediate supervisor, higher level supervision, or Department of Labor Relations representatives. Such discussions will not interfere with the right of any employee to process grievances through the grievance procedure, providing the Union is promptly notified of such grievance as it is being processed.

Section 2

Step 1(A):

An employee with a grievance should first discuss the matter with his immediate supervisor. In this discussion, the persons involved shall make an earnest effort to resolve the matter. The Supervisor shall make whatever additional investigation is necessary and shall give his answer as soon as practicable, but within three (3) working days. It is agreed that most grievances should be settled at this Step.

Step 2(B):

If an employee is not satisfied with the answer at Step 1 he shall then reduce his grievance to writing, either on a form mutually agreed to by the parties or in a letter. Such grievance must contain the following information: (1) A statement indicating his decision

to process his grievance through the negotiated grievance procedure; (2) A statement presenting the nature of the grievance; (3) A statement outlining the relief sought; and (4) Specific reference to the clause or clauses of the Agreement which the grievant feels have been violated. The employee and/or his chosen representative shall submit the written grievance to the Department Head, who, in turn, shall submit to the Union a written answer to the grievance within five (5) working days of the answer at Step 1 (A).

Step 3(C):

If the decision at Step 2 is not satisfactory to the employee, he may appeal, in writing to the Director of Labor Relations within ten (10) working days after receiving the decision at Step 2. Upon receipt of such an appeal, the Director or his designated representative will investigate the grievance and make an effort to resolve it to the satisfaction of all parties. Prior to denying any grievance at this Step, the aggrieved employee and/or his representative, if any, shall be afforded the right to meet and discuss the grievance with the Director or his representative. The decision of the Director or his representative will be made as soon as practicable, but not later than ten (10) working days after receipt of appeal from Step 2.

Section 3

Any grievance which is not taken up with the employee's immediate Supervisor within fifteen (15) working days after the occurrence of the matter, out of which the grievance arises, shall not be presented or considered at a later date. The employee agrees that extenuating circumstances may arise where an employee will not have knowledge, within the time limits prescribed, of the matter which resulted in his becoming aggrieved and, in such instances the Employer will give due regard and consideration to the time limits set forth above.

Extensions to all time limits mentioned in this Article may be made by mutual agreement of the parties in writing. Any grievance not answered within the time limits may be taken immediately to the next step of the grievance procedure.

Section 4

At Steps 2 and 3 of this procedure, the Employer and the Union shall be permitted to call a reasonable number of relevant witnesses, normally not more than two (2) from each party at Step 2 and three (3) from each party at Step 3.

33

Section 5

When several employees within the unit have an identical grievance, the Union will select one individual case for processing with the understanding that the decision on the case will be applied to the other identical cases. Such grievances shall be known as a Unit Grievance.

Section 6

An employee's grievance will be considered settled upon his written request, or when the complainant ceases to be a regular employee of the City, by resignation or when the time limit to appeal to the next Step expires, unless the grievance is directly related to the employee's termination and he desires it to be processed, or unless the Union considers the grievance to reflect on or affect other employees in the bargaining unit.

Section 7

Grievances will be heard at times most practical to do so. Should such times occur during periods other than normal working hours, the City shall accept no financial obligation for such time spent by the grievant and/or other Union representatives.

Section 8

The Union agrees that it shall cooperate with the City by making every effort to handle grievances in such a manner so as to cause a minimum of interference with normal operations of a Department.

Section 9

It is recognized by both parties that on occasions a grievance may develop, the immediate disposition of which would be in the best interests of both parties (i.e. discharge or suspension). In such instances, the responsible Union official may contact the Labor Relations Director directly to acquaint him with the situation. At that time a determination shall be made as to what procedure is to be followed.

## ARTICLE 20 - Prior Practices

Nothing in this Agreement shall be construed as abridging any right, benefit or privilege that employees have enjoyed heretofore unless it is specifically included as a provision of this Agreement.

## ARTICLE 21 - Non-Discrimination

There shall be no discrimination, threat, penalty, coercion or intimidation of any kind against any employee for reasons of race, creed, color, sex, religious belief, union membership, national origin, political affiliation, age, handicap or union activity.

## ARTICLE 22 - Insurance

Section 1

Effective April 1, 1996, the City shall cover all employees scheduled to work twenty hours (20) per week or more and their eligible dependents under one of three point of service managed care programs known as "Plan A" and "Plan B" and "Plan C" based on the Blue Cross of Connecticut Century Preferred Network. Employees may also choose an HMO, which at the time of the execution of this Agreement includes either of the following: (1) the Constitution Health Care, Inc. (CHC) "Premier 10" HMO Plan; or (2) the Community Health Care Plan (CHCP) "Advantage 10" Staff Model HMO Plan. Employees may choose between the medical plans at the time of enrollment and at the time of the City's annual open enrollment. The plans are summarized as follows:

(A) The Point of Service Managed Care Medical Program based on the Blue Cross/Blue Shield of Connecticut Century Preferred Network - "Plan A."

(1) Point of Service Managed Cared Medical Program services provided by network providers will be covered as follows:

a. Hospital in-patient, hospital out-patient and surgical services will be covered in full.

44

# AFFIRMATIVE ACTION PLAN



# NEW HAVEN CONNECTICUT